UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMES AARON TODD,

       Petitioner,

v().                                                                                  Case No.   6:23-cv-215-PGB-RMN

SECRETARY, DEPARTMENT OF
CORRECTIONS,

       Respondent.
_____/

## **ORDER**

THIS CAUSE is before the Court on Petitioner James Aaron Todd's Petition for Writ of Habeas Corpus ("Petition," Doc. 1) filed pursuant to 28 U.S.C. § 2254. Respondents filed a Response to the Petition ("Response to Petition," Doc. 15) in compliance with this Court's instructions. Petitioner was provided an opportunity to file a reply to the Response but did not do so.

Petitioner asserts trial counsel rendered ineffective assistance by failing to move to dismiss the charge of trafficking in hydromorphone and by failing to present a prescription defense at trial. For the following reasons, the Petition is dismissed as untimely.

### I. Procedural History

A jury convicted Petitioner of trafficking in cocaine (Count One), possession

of methadone (Count Two), trafficking in oxycodone (14 grams or more but less than 28 grams) (Count Three), trafficking in hydromorphone (28 grams or more but less than 30 kilograms) (Count Four), possession of fentanyl (Count Five), possession of alprazolam (Count Six), possession of carisoprodol (Count Seven), possession of diazepam (Count Eight), possession of amphetamine (Count Nine), possession of cannabis not more than 20 grams (Count Ten), possession of paraphernalia (Count Eleven), and resisting an officer without violence (Count Twelve). (Doc. 15-1 at 295-306.) The trial court sentenced Petitioner to imprisonment for five years for Counts One, Two, Five, Six, Seven, Eight, and Nine, fifteen years for Count Three, twenty-five years for Count Four, and 364-days for Counts Ten, Eleven, and Twelve with all sentences to run concurrently. (*Id.* at 115-17.) Petitioner appealed, and on August 29, 2017, the Fifth District Court of Appeal of Florida ("Fifth DCA") affirmed *per curiam*. (*Id.* at 1435.)

Petitioner filed a motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a) ("Rule 3.800(a) Motion") on September 10, 2018.[1]

---

[1] This is the filing date under Florida law. *See Thompson v. State*, 761 So. 2d 324, 326 (Fla. 2000) ("[H]enceforth we will presume that a legal document submitted by an inmate is timely filed if it contains a certificate of service showing that the pleading was placed in the hands of prison or jail officials for mailing on a particular date. . . . This presumption will shift the burden to the state to prove that the document was not timely placed in prison officials' hands for mailing."). The Court applies this law in determining the dates of Petitioner's state court filings.

(Doc. 15-2 at 519-21.) On September 21, 2018, the state court denied the motion, and Petitioner did not appeal. (*Id*. at 535-36.)

On October 9, 2018, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 ("Rule 3.850 Motion"), which he amended. (Doc. Nos. 15-1 at 1462-72, 15-2 at 2-36.) Thereafter, the state court denied several grounds and ordered an evidentiary hearing on two grounds. (Doc. 15-2 at 139-43.) After the hearing, the state court denied the remaining grounds. (*Id.* at 272-80.) Petitioner appealed, and the Fifth DCA affirmed *per curiam*. (*Id.* at 515.) Mandate was issued on September 16, 2022. (*Id.* at 517.)

While his Rule 3.850 Motion was pending, on April 8, 2020, Petitioner filed a state petition for writ of habeas corpus. (Doc. 15-1 at 1439-41.) The Fifth DCA dismissed the petition for lack of jurisdiction on May 13, 2020. (*Id.* at 1450.)

Petitioner filed the Petition on February 1, 2023.[2] (Doc. 1 at 1-27.)

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2244:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

---

[2] This is the date under the "mailbox rule." Under that rule, "a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *See, e.g.*, *Williams v. McNeil*, 557 F.3d 1287, 1290 (11th Cir. 2009).

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d)(1)-(2).

### III. ANALYSIS

Respondent contends that the Petition is untimely. (Doc. 15 at 14.) The Fifth DCA affirmed Petitioner's conviction on August 29, 2017. Petitioner then had ninety days, through November 27, 2017, to petition the Supreme Court of the United States for writ of certiorari. *See* Sup. Ct. R. 13. Thus, under § 2244(d)(1)(A), the judgment of conviction became final on November 27, 2017, and Petitioner's

statute of limitations began to run on that date. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) (holding that the one-year period of limitation does not begin to run until the ninety-day period for filing a petition for certiorari with the Supreme Court of the United States has expired).

Petitioner's one-year limitation was tolled during the pendency of his "properly filed" state collateral proceedings. *See* 28 U.S.C. § 2244(d)(2). When Petitioner filed his Rule 3.800(a) Motion on September 10, 2018, 287 days of his limitation period had expired. The time tolled through September 16, 2022, the date that mandate was issued in Petitioner's appeal of the denial of his Rule 3.850 Motion.[3] At that time, seventy-eight (365–287=78) days remained for Petitioner to timely file a federal habeas petition, or through December 5, 2022.[4] However, Petitioner initiated this action February 1, 2023.

Petitioner asserts that he is actually innocent to overcome his untimely filing. *See* Doc. 1 at 5-16, 25. A showing of actual innocence may relieve habeas petitioners from the burdens imposed by § 2244(d). *See McQuiggin v. Perkins*, 569

---

[3] Petitioner did not appeal the denial of his Rule 3.800(a) Motion on September 21, 2018. Before Petitioner's appeal period concluded, he filed the Rule 3.850 Motion. Thus, the limitation period was tolled through the conclusion of his post-conviction proceeding.

[4] Petitioner's limitation period expired on December 3, 2022, a Saturday. Petitioner, therefore, had until the next business day, Monday, December 5, 2022, to timely file his habeas petition.

5

U.S. 383, 386 (2013). "A habeas petitioner asserting actual innocence to avoid a procedural bar must show that his conviction 'probably resulted' from 'a constitutional violation.'" *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup*, 513 U.S. at 324. "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 615 (1998). To make a showing of actual innocence, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *McQuiggen*, 569 U.S. at 399 (quotation marks omitted).

Here, to demonstrate his actual innocence, Petitioner relies on the facts supporting his claim that counsel rendered ineffective assistance by failing to file a motion to dismiss Count Four based on his prescription for hydromorphone and failing to present a prescription defense at trial as to Count Four. (*Id*. at 5-16.) Petitioner maintains that he had a prescription for hydromorphone and "had been receiving 140 tablets of hydromorphone (8mg/each) from 4/26/2013 – 12/18/2013," but counsel failed to file a motion to dismiss Count Four or present a prescription defense at trial despite receiving Petitioner's prescription from his

6

relative. (*Id.*) According to Petitioner, he wanted counsel to move to dismiss Count Four before trial based on his valid prescription, and if unsuccessful, then use the prescription defense at trial along with the ownership defense that was presented.[5] (*Id.*) Petitioner notes that although he and counsel knew that he had a legal prescription for hydromorphone, the only time Petitioner's prescription was brought to the trial court's attention was at sentencing. (*Id.* at 15.)

Under Florida law, "the prescription defense is an affirmative defense to trafficking, which if proven" establishes innocence. *Buhs v. Sec'y, Fla. Dep't of Corr.*, 809 F. App'x 619, 629 (11th Cir. 2020). Neither the Eleventh Circuit nor the Supreme Court, however, has held that an affirmative defense, if proven, qualifies as proof of actual innocence to serve as a gateway to consider constitutional claims barred by the statute of limitation. *See Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1013–15 (11th Cir. 2012) (discussing cases from other circuit courts addressing whether affirmative defenses relate to factual or legal innocence). Further, the Eleventh Circuit has not decided whether evidence of actual innocence must be newly discovered, "meaning it was not available or discoverable at the time of the trial," or "merely newly presented, meaning its availability or discoverability at the time of trial is irrelevant." *Green v. Sec'y, Dep't*

---

[5] At trial, the defense called Kenneth Bauford ("Bauford") as a witness, and Bauford testified that the drugs contained in the black bag in Petitioner's car belonged to him.

*of Corr.*, 28 F.4th 1089, 1152 n.132 (11th Cir. 2022); *but see Frederick v. Sec'y Dep't of Corr.*, 481 F. App'x 472, 474 (11th Cir. 2012) (citing *Rozzelle* for the proposition that "evidence known to petitioner at time of trial was not 'new'").

Here, Petitioner knew he had a prescription for hydromorphone before trial.[6] Thus, it is questionable that his prescription evidence qualifies as "new" reliable evidence of actual innocence. It is also unclear whether a petitioner who proves the prescription defense is factually innocent rather than legally innocent. Nevertheless, assuming without deciding that Petitioner's prescription evidence is new and that a successful affirmative defense qualifies as factual innocence, not legal innocence, the Court concludes that Petitioner has not met his burden of proving that he is factually innocent of trafficking in hydromorphone.

The evidence presented at trial, as summarized by the state post-conviction court in denying Petitioner's ground, included the following:

> Officer Yisrael testified concerning a large amount of cash found on Defendant and the search of Defendant's vehicle, wherein a black bag was discovered that contained what appeared to be a large amount of

---

[6] In his Rule 3.850 proceeding, Petitioner submitted his prescriptions from Oaks Pharmacy and Mims Discount Pharmacy reflecting that he had prescriptions for hydromorphone filled on the following dates: (1) April 26, 2013 – 112 pills (8mg); (2) June 28, 2013 – 140 pills (8mg); (3) July 23, 2013 – 140 pills (8mg); (4) August 19, 2013 – 140 pills (8mg); (5) September 17, 2023 – 140 pills (8mg) (6) October 15, 2013 – 140 pills (8mg); (7) November 13, 2013 – 140 pills (8mg); and (8) December 13, 2013 – 140 pills (8mg). (Doc. 15-1 at 1474-76.) The parties' briefs filed in Petitioner's Rule 3.850 appeal indicate that the police found 24, 8mg hydromorphone pills in a plastic bag and 384, 8mg hydromorphone pills in a black bag in Petitioner's car. (Doc. 15-2 at 457, 504-05.)

> suspected narcotics in pill and powder form. Officer Yisrael further testified about the contents of the bag recovered from Defendant's vehicle and how the contents were packaged. Officer Chauncey Hampton testified that upon opening the door to Defendant's car he "immediately observed a clear plastic bag in the driver's side pocket door that contained suspected crack cocaine and some pills." Officer Hampton further testified that he discovered a bag on the floorboard of Defendant's car that "contained cocaine, pills, marijuana, et cetra [sic]." Officer Matthew Vega testified that while searching Defendant's person he found a large sum of cash in one of Defendant's pockets.

*See* Doc. 15-2 at 141-42, 273, 275 (citations omitted). The hydromorphone pills found in Petitioner's vehicle were not in a pill bottle(s) but instead were in various baggies inside a black bag and a plastic bag, both of which contained numerous other controlled substances packaged similarly. (Doc. 15-1 at 780-81, 796-818, 843, 929-68.) Officers also found a digital scale in the center console of Petitioner's car and razor blades in the black bag. (*Id.* at 820, 823.)

As stated above, Petitioner had evidence supporting a prescription defense as to Count Four. *See* Fla. Stat. 893.13(6)(a) (2013) ("It is unlawful for any person to be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription. . . ."). However, the State presented evidence which contradicted the prescription defense, *i.e.*, the way the hydromorphone pills were packaged in plastic baggies contained in two larger bags that held numerous other similarly packaged controlled substances. *See, e.g., McCoy v. State,* 56 So. 3d 37, 40

9

(Fla. 1st DCA 2010*)* (concluding that the trial court did not err in denying motion for judgment of acquittal because although competent, substantial evidence supported the appellant's prescription defense, a jury question existed where the State presented evidence, such as "the questionable nature in which the pills were bottled," contradicting the defense). Considering the State's contradicting evidence, the Court cannot conclude that it is more likely than not that no reasonable juror would have convicted Petitioner of trafficking in hydromorphone had the prescription evidence been presented. Thus, Petitioner has not established that he is factually innocent. *See House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup* for the proposition that "[to prevail on a claim of actual innocence, the petitioner] must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"). Accordingly, this action is untimely.[7]

### IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484

---

[7] Any allegations not specifically addressed are without merit.

(2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.; Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

In an abundance of caution, the Court will find that Petitioner has shown that jurists of reason would find it debatable whether (1) the Petition states a valid claim of the denial of a constitutional right, and (2) the Court was correct in its ruling that the Petition is untimely. Thus, the Court will grant Petitioner a certificate of appealability.

Accordingly, it is hereby **ORDERED** and **ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED** with prejudice.

2. Petitioner is **GRANTED** a Certificate of Appealability.

3. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on August 6, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Party